UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Fort Pierce Division)

Case No.

NICOLE PATSALIDES,

    Plaintiff,

vs.

CITY OF FORT PIERCE,

    Defendant.
_____/

**Complaint — Jury Trial Demanded**

Plaintiff, Nicole Patsalides, sues defendant, City of Fort Pierce, and shows:

**Introduction and Summary**

1.    This is an action for sex discrimination and retaliation, including hostile-environment harassment as a form of each, brought by Nicole Patsalides, a female former police officer with the City of Fort Pierce Police Department ("FPPD"): the City fired Ms. Patsalides (after extending her probation) because she had complained about the behavior of Fred Pate — a notorious, hands-on sexual harasser during his 22 years on the department. The final incident prompting her to complain involved Mr. Pate's reaching through the open window of her police cruiser and grabbing her upper inner

thigh.  Mr. Pate's friends within the ranks began immediately harassing Ms. Patsalides as a "snitch" who was not part of "the brotherhood," and who, if she could not deal with Mr. Pate's behavior, could not "deal with being a cop."  Ms. Patsalides was in the internal-affairs office virtually every day between when she complained about Mr. Pate and April 15, 2014 when her complaint was sustained:  she was either complaining about the harassing behavior directed towards her (about which the internal-affairs investigators said they could do nothing); responding to bogus allegations instituted by Mr. Pate's wife, a St. Lucie County dispatcher, or pressing the internal-affairs staff to complete its investigation and issue findings.  Almost immediately after the findings were announced — sustaining all charges against Mr. Pate — Ms. Patsalides received a two counseling notices, one for time-off days dating back months and previously approved by her direct supervisor, and her probation was extended.  She then developed diverticulitis, a stress-induced intestinal disorder, and missed work during hospital stays necessitated by surgery.  An acting chief of police fired Ms. Patsalides for failing to meet probationary standards.  Ms. Patsalides sues pursuant to both the discrimination and retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended, and the Florida Civil Rights Act of 1992.

## Jurisdiction and Venue

2.     This action arises under Title VII of the Civil Rights Act of 1964,

Case 2:15-cv-14431-DLG   Document 1   Entered on FLSD Docket 12/16/2015   Page 3 of 16

as amended, 42 U.S.C. § 2000e, et seq. ("Title VII").  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3).  The Court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear plaintiff's claims under the Florida Civil Rights Act of 1992 ("FCRA").

    3.    Venue is proper in the Fort Pierce Division of the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because the claims arose there and City of Fort Pierce may be found there.

## Parties

    4.    Nicole Patsalides at all times material was a woman whom City of Fort Pierce employed as a police officer.  She is protected by Title VII and the FCRA because:

        a.    she is a woman who suffered discrimination, and

        b.    she opposed what she reasonably believed to be behavior that constituted unlawful employment acts under each of the two statutes.

    5.    The City of Fort Pierce ("Fort Pierce") is a political subdivision of the State of Florida that employs more than 501 persons.  It is an "employer" as envisioned by 42 U.S.C. § 2000e(b) and § 760.02(7), FLA. STAT. (2015).

Page 3 of 16

## Satisfaction of Conditions Precedent

6. Ms. Patsalides filed Charges of Discrimination with the EEOC on or about September 19, 2014.

7. As to Title VII, the EEOC issued Ms. Patsalides a Notice of Right to Sue dated September 17, 2015, within 90 days of her receipt of which she is filing this action.

8. As to the FCRA, more than 180 days have elapsed from her filing the Charge of Discrimination without the Florida Commission on Human Relations either conciliating the charges or making a finding adverse to Ms. Patsalides.

9. All other conditions precedent have been satisfied or waived.

## Applicable Statutory Provisions

10. Title VII provides in pertinent part at 42 U.S.C. § 2000e-2(a) that

It shall be an unlawful employment practice for an employer —

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex …; or

(2) to limit, segregate, or classify his employees … in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's … sex….

11. Title VII further provides at 42 U.S.C. § 2000e-3(a) as follows:

**Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.** It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this title…

12. The FCRA provides in pertinent part at § 760.10(1), Fla. Stat. (2015) as follows:

It is an unlawful employment practice for an employer:

(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such  individual's … sex ….

(b) To limit, segregate, or classify employees … in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's … sex….

13. The FCRA further provides at § 760.10(7), Fla. Stat. (2015) that

It is an unlawful employment practice for an employer … to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge … under this section.

## General Allegations

14. Ms. Patsalides was hired by the Fort Pierce Police Department April 14, 2012.

15. Following a successful completion of field training, Ms. Patsalides was on October 6, 2013 put onto the 8 a.m. road-patrol day shift — along with Mr. Pate, who was returning to full active duty following, upon information and belief, his being on either restricted duty or administrative

leave involving another allegation of sexual harassment.

16.     Mr. Pate immediately began touching Ms. Patsalides in an unwelcome manner — e.g., grabbing her arm or shoulder on the very first day, once putting his hand on her breast under the guise of adjusting her name tag and, the final time, reaching through her patrol car window to grab her upper thigh.

17.     When Robert Jaques, previously Ms. Patsalides's field training officer, casually asked her how things were going, she responded that "Fred's getting kind of weird," and then laid out the details:  Mr. Jaques referred Ms. Patsalides to his wife, Melissa Jaques, a sergeant who reported Ms. Patsalides's concerns to higher management, leading to Ms. Patsalides's being summoned October 15, 2013 to Internal Affairs.

18.     Caleb Gillette, the internal-affairs lieutenant, told Ms. Patsalides as soon as she related what Mr. Pate had done to her:  "I already know he did it…. This is not the first time."

19.     Although Gregory Kirk, then a captain, told Ms. Patsalides that he wanted to have Mr. Pate arrested for his behavior towards her, then-Chief R. Sean Baldwin blocked that from happening.

20.     Shortly after Ms. Patsalides complained to Internal Affairs about Mr. Pate:

    a.     Ms. Patsalides got a new sergeant, James Grecco, who

recommended in a mid-term probationary evaluation that not only should she "be evaluated over the next six months to determine if she can be recommended for regular employment," but that her probationary period should be extended for an additional six months;

   b. Mr. Pate's male colleagues on the day shift began:

     i. shunning Ms. Patsalides;

     ii. taunting her about how "you don't snitch on other cops," "this is a brotherhood," "if you can't handle that[, i.e., Mr. Pate's behavior], you can't handle being a cop," and

     iii. responding at what seemed to Ms. Patsalides to be a relaxed pace whenever she was in a situation requiring more back-up.

  21. Ms. Patsalides complained about the gender-based/retaliatory harassment by her male squad colleagues to Lt. Gillette, who passed her down to his internal-affairs subordinate, Sgt. Brian McNaught, who told her, as she approached him in tears to complain about the how her male co-workers were treating her, that "there is nothing that we can really do."

  22. What Internal Affairs could — and did — do, however, was to subject Ms. Patsalides over the next several months to investigations of unfounded accusations by Kathleen Pate, Mr. Pate's wife and a supervisor at the St. Lucie County central dispatch facility that, for example:

   a. Ms. Patsalides had cheated to get through the police

academy, and

      b.    she had stolen money from others while in the police academy.

23.    Sgt. Grecco and James Tedder, who was then the day-shift lieutenant, criticized Ms. Patsalides for having complained February 1 to Cassandra Davis, another sergeant, who came across Ms. Patsalides crying in the police-station parking lot one evening, about Ms. Patsalides's supervisors' failure to do anything about the behavior of Mr. Pate's police-officer friends towards her.

24.    The FPPD refused to permit Ms. Patsalides to transfer to the night shift, which has a woman lieutenant (Katherine England), or to Sgt. Davis's day-shift squad, even though:

      a.    Ms. Patsalides requested the transfer to the night shift to get away from the supervision of then-Lt. Tedder, a close friend of Officer Pate, or at least to Sgt. Davis's squad to get away from Officer Pate's male squad-mates who were shunning and heckling her;

      b.    Ms. Patsalides made known to the FPPD that she was also requesting the transfer to the night shift because of care-giving responsibilities for her late grandfather, who was terminally ill at the time, although

      c.    A male recruit (Kevin Mohamed) was permitted to transfer

to the night shift.

25. Ms. Patsalides repeatedly visited the internal-affairs office during the early months of 2014, asking what progress was being made on her complaint.

26. Finally, on April 15, Lt. Gillette notified Ms. Patsalides that Internal Affairs had sustained charges against Mr. Pate arising out of her complaint on grounds of sexual harassment, conduct unbecoming an officer, being a chronic offender and insubordination.

27. Mr. Pate, upon information and belief, was not disciplined, but instead was permitted to retire in good standing.

28. Meanwhile, within a week of the conclusion of the investigation that found Mr. Pate guilty of sexually harassing Ms. Patsalides:

   a. Lt. Gillette issued Ms. Patsalides a "counseling action notice" April 22 for having failed to attend a speed-radar class at Indian River State College for which she had signed up October 30, but to which Lt. Tedder refused her permission to go,

   b. Sgt. Grecco wrote Ms. Patsalides up April 24 for having used six "sick days" (August 30, when she was out with the flu, and November 17, December 15, January 25, February 13, March 29 and April 23, on each which days she needed to take her terminally ill grandfather to medical appointments, which time off Sgt. Grecco had approved when she

took it),

      c.    Lt. Tedder told Ms. Patsalides that:

           i.    she was a "bad cop," and

           ii.    her probation was being extended for six months.

29. Because of the stress under which she was operating, according to Ms. Patsalides's physicians, she developed diverticulitis, for which she was hospitalized June 27, 2014 and again July 15-24.

30. Ms. Patsalides returned to work on light duty August 24, and to full duty September 9.

31. She was informed by Acting Chief Frank Amandro September 15, however, that she was being relieved of duty pending a predetermination hearing September 22 concerning her proposed termination.

32. Ms. Patsalides filed her charge or discrimination September 19, and gave a copy of it to Acting Chief Amandro September 22, at which time he fired her.

33. To the extent that Acting Chief Amandro took any of his actions against Ms. Patsalides based on the recommendations of lower-level supervisors, e.g., Lts. Tedder and Gillette or Sgt. Grecco, the sex-discriminatory and retaliatory motives of those lower-level supervisors infected the decisions of Acting Chief Amandro, rendering him a mere "cat's paw" for persons acting with forbidden motives.

### Count I:  Sex Discrimination in Violation of Title VII

34. Plaintiff realleges and adopts, as if fully set forth in this Count, all of the allegations in ¶¶ 1-4(a), 5-7, 9-10, 14-19, 20(b), 21, 23-33.

35. FPPD did not treat male police officers, or women police officers who did not complain about sex discrimination, in the same way that it treated Ms. Patsalides.

36. Ms. Patsalides's gender and her having internally opposed sex discrimination were why FPPD co-workers and management treated Ms. Patsalides as they did, which thus constituted sex discrimination and retaliation in violation of both the opposition and participation clauses of Title VII and the FCRA.

37. FPPD's conduct discriminated against Ms. Patsalides with respect to the compensation, terms, conditions, or privileges of employment because of Ms. Patsalides's sex and because she opposed what she reasonably believed to be unlawful employment practices, i.e., sexual harassment and retaliation.

38. As a direct, natural, proximate and foreseeable result of the actions of FPPD, Ms. Patsalides has suffered past and future pecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, a diminution of her reputation and other non-pecuniary losses.

39. The sex discrimination and retaliation that Ms. Patsalides has suffered, in violation of the statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

40. Ms. Patsalides is entitled to recover reasonable attorneys' fees and litigation expenses:

    a. pursuant to 42 U.S.C. § 2000e-5(k) for her Title VII claims; and

    b. pursuant to § 760.11(5), FLA. STAT. (2015) for her FCRA claims.

WHEREFORE, Plaintiff, Nicole Patsalides, prays that this Court will:

***One***, determine and declare that Fort Pierce's practices toward Ms. Patsalides violated Ms. Patsalides's rights against sex discrimination under Title VII;

***Two***, enjoin Fort Pierce and its agents from continuing to violate Plaintiff's statutory rights under Title VII and to make Ms. Patsalides whole through reinstatement, back pay and restoration of seniority and benefits, or, if reinstatement is not effective as a make-whole remedy, front pay;

***Three***, enter a judgment for Ms. Patsalides and against Fort Pierce for damages;

***Four***, grant Ms. Patsalides her costs and reasonable attorney's fees

pursuant to 42 U.S.C. § 2000e-5(k); and

*Five*, grant Ms. Patsalides such other and further relief as the circumstances and law provide.

## Count II: Sex Discrimination in Violation of FCRA

41.  Plaintiff realleges and adopts, as if fully set forth in this Count, all of the allegations in ¶¶ 1-3, 4(a), 5-6, 8-9, 12, 14-19, 20(b), 21, 23-33 35-39 and 40(b).

WHEREFORE, Plaintiff, Nicole Patsalides, prays that this Court will:

*One*, determine and declare that Fort Pierce's practices toward Ms. Patsalides violated Ms. Patsalides's rights under the FCRA;

*Two*, enjoin Fort Pierce and its agents from continuing to violate Ms. Patsalides's statutory rights and to make Ms. Patsalides whole through reinstatement, back pay and restoration of seniority and benefits, or, if reinstatement is not effective as a make-whole remedy, front pay;

*Three*, enter a judgment for Ms. Patsalides and against Fort Pierce for damages;

*Four*, grant Ms. Patsalides her costs and reasonable attorney's fees pursuant to § 760.11(5), FLA. STAT. (2015); and

*Five*, grant Ms. Patsalides such other and further relief as the circumstances and law provide.

### **Count III: Opposition-Clause Retaliation in Violation of Title VII**

42.  Plaintiff realleges and adopts, as if fully set forth in this Count, all of the allegations in ¶¶ 1-3, 4(b), 5-7, 9, 11, 14-33, 35-39 and 40(a).

43.  Ms. Patsalides reasonably believed that the gender-based and retaliatory behavior to which she was subjected by the FPPD beginning in late 2013 and continuing through her termination, through her co-workers and the FPPD's supervisory and management personnel, constituted unlawful employment practices under Title VII and the FCRA.

44.  The actions of the FPPD in response to Ms. Patsalides's opposition to those behaviors, employment actions and the inaction of management in response to her complaints would have been materially adverse to a reasonable employee, and were harmful to the point that they could well dissuade a reasonable worker from opposing an unlawful employment practice.

WHEREFORE, Plaintiff, Nicole Patsalides, prays that this Court will:

***One***, determine and declare that Fort Pierce's practices toward Ms. Patsalides violated her rights against retaliatory discrimination under Title VII;

***Two***, enjoin Fort Pierce and its agents from continuing to violate Plaintiff's statutory rights under Title VII and to make Ms. Patsalides whole through reinstatement, back pay and restoration of seniority and benefits,

or, if reinstatement is not effective as a make-whole remedy, front pay; ;

*Three*, enter a judgment for Ms. Patsalides and against Fort Pierce for damages;

*Four*, grant Ms. Patsalides her costs and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k); and

*Five*, grant Ms. Patsalides such other and further relief as the circumstances and law provide.

### Count IV: Opposition-Clause Retaliation in Violation of FCRA

45. Plaintiff realleges and adopts, as if fully set forth in this Count, all of the allegations in all of the allegations in ¶¶ 1-3, 4(b), 5-6, 8-9, 13-33, 35-39, 40(b). and 43-44.

WHEREFORE, Plaintiff, Nicole Patsalides, prays that this Court will:

*One*, determine and declare that Fort Pierce's practices toward Ms. Patsalides violated her rights under the FCRA;

*Two*, enjoin Fort Pierce and its agent from continuing to violate Ms. Patsalides's statutory rights and to make Ms. Patsalides whole through reinstatement, back pay and restoration of seniority and benefits, or, if reinstatement is not effective as a make-whole remedy, front pay;

*Three*, enter a judgment for Ms. Patsalides and against Fort Pierce for damages;

*Four*, grant Ms. Patsalides her costs and reasonable attorney's fees

pursuant to § 760.11(5), FLA. STAT. (2015); and

*Five*, grant Ms. Patsalides such other and further relief as the circumstances and law provide.

### Jury Demand

Plaintiff demands trial by jury for all issues so triable.

Respectfully submitted,

/s/  William R. Amlong
WILLIAM R. AMLONG
Florida Bar Number 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar Number 275565
KAmlong@TheAmlongFirm.com
ALISON L. CHURLY-DAVIS
Florida Bar Number 97850
AChurly@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth St.,
     Second Floor
Fort Lauderdale, Florida  33301
(954)462-1983

***Attorneys for Plaintiff,
Nicole Patsalides***